IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: CONSOLIDATED "NON-FILING INSURANCE" FEE LITIGATION | CASE NO. 2:96-md-1130-MEF |
| | THIS DOCUMENT RELATES TO: |
| PRINCESS NOBLES, *et al.*, v. ASSOCIATES CORPORATION OF NORTH AMERICA, *et al.* | CASE NO. 2:94-cv-699-UWC |
| LYNN HOWELL, *et al.*, v. SECURITY FINANCE CORPORATION OF GEORGIA, *et al.* | CASE NO. 2:97-cv-832-UWC |

(WO—Do Not Publish)

# MEMORANDUM OPINION AND ORDER

This cause is before the Court on Defendant Security Finance of Georgia, LLC's ("Security Finance") Motion to Modify Settlement Agreement and Final Judgment Pursuant to Rule 60(b)(5),[1] filed on September 8, 2009. For the following reasons, the Court will deny the motion.

## I. BACKGROUND

In 1994, the plaintiffs, a class of consumer-borrowers, filed this class action against Security Finance and hundreds of other defendants, including consumer-finance companies, insurance companies, and merchant retailers. The plaintiffs

---

[1] This motion is Document No. 791 in Case No. 2:96-md-1130-MEF, Document No. 1288 in Case No. 2:94-cv-699-UWC, and Document No. 26 in Case No. 2:97-cv-832-UWC.

alleged that, among other things, the defendants had violated the Truth in Lending Act ("TILA") by charging a fee for "non-filing" insurance and wrongfully listing that fee in the "amount financed" column of the financing statement as a charge for insurance. Because non-filing insurance is not real insurance, the plaintiffs alleged that the fee was nothing more than an illegal, undisclosed finance charge, and they sought injunctive relief, statutory damages, disgorgement of ill-gotten gains, an equitable accounting, restitution, and other remedies.

The plaintiffs and many of the defendants, including Security Finance, resolved this litigation through a class-action settlement agreement. As part of the settlement agreement, Security Finance consented to the entry of a final judgment that included injunctive relief. This Court, the Honorable U.W. Clemons presiding, approved the settlement agreement and entered final judgment on July 15, 1999. This final judgment (the "consent decree") permanently enjoined and prohibited Security Finance and all of the other defendants that had agreed to the settlement from charging its customers fees or premiums for non-filing insurance at any time in the future. (*See id.*, Ex. #1 at 15, ¶ 8.)

Almost ten years later, in October 2008, the U.S. Court of Appeals for the Eleventh Circuit ruled that TILA does not provide for injunctive relief for private litigants. *See Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008)

("Because we do not expect Congress to expressly preclude remedies, we do not read TILA to confer upon private litigants an implied right to an injunction or other equitable relief such as restitution or disgorgement." (quotation marks omitted)).[2] On September 8, 2009, in response to *Beneficial*, Security Finance moved under Federal Rule of Civil Procedure 60(b)(5) to lift the injunction imposed by the consent decree. Security Finance asserts three reasons for lifting the injunction. First, it argues that it has faithfully abided by the injunction since the injunction was first imposed by this Court. Second, it argues that the injunction hinders its ability to operate its business effectively, thereby placing it at a competitive disadvantage. Third, it argues that *Beneficial* changed the law on which the consent decree was premised so significantly as to make the continued application of the decree inequitable.

## II. DISCUSSION

Federal Rule of Civil Procedure 60(b)(5) gives this Court power to modify a consent decree in circumstances where the continued application of the decree would be inequitable.[3] *Johnson v. Florida*, 348 F.3d 1334, 1341 (11th Cir. 2003).

---

[2] The *Beneficial* case was a "tag-along" case in this multi-district litigation before it was remanded to the Middle District of Florida in 2002. It involved the same non-filing-insurance-fees scheme, and its holding clearly applies to this case.

[3] Rule 60(b) provides, in relevant part: "On motion and just terms, the court may relief a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) . . . applying it prospectively is no longer equitable . . . ." Fed R. Civ. P. 60(b).

In 1992, the U.S. Supreme Court propounded a flexible legal standard, known as the *Rufo* "changed circumstances" standard, for modifications of consent decrees arising out of "institutional reform" litigation (i.e., cases involving the structural reform of public institutions). *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). Since then, there has been considerable disagreement among the Courts of Appeals on whether the *Rufo* standard also applies to modifications of consent decrees arising out of non-institutional-reform litigation between private parties, like the consent decree in this case.

Some courts have held that the *Rufo* standard applies to all Rule 60(b)(5) motions to modify consent decrees.[4] *See, e.g.*, *United States v. W. Elec. Co.*, 46 F.3d 1198 (D.C. Cir. 1995). Other courts have held that the more stringent "grievous wrong" standard, first announced by the Supreme Court in *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932), applies instead.[5] *See, e.g.*, *W.L. Gore & Assocs. v. C.R. Bard*, 977 F.2d 558 (Fed. Cir. 1992). Still other courts have held that the *Rufo* and *Swift* standards are two poles along a spectrum of possible standards and that courts must identify the proper standard on this continuum by considering and balancing all of the relevant equitable factors in each particular

---

[4] Security Finance urges this Court to apply the *Rufo* standard in this case.

[5] The plaintiffs urge this Court to apply the *Swift* standard in this case.

case. *See, e.g.*, *Bldg. & Constr. Trades Council of Phila. v. NLRB*, 64 F.3d 880 (3d Cir. 1995); *Alexis Lichine & Cie v. Sacha A. Lichine Estate Selections, Ltd.*, 45 F.3d 582 (1st Cir. 1995). Unfortunately, the Eleventh Circuit has not definitively decided which legal standard this Court should apply in this kind of case.[6]

The Court will side-step the complicated question of which standard is the correct standard to apply in this case. Instead, the Court will apply the *Rufo* standard (without holding that it is the correct standard) because it is the most flexible and lenient of the possible standards, and Security Finance's motion does not satisfy it. Since Security Finance's motion does not satisfy the most flexible and lenient of the possible standards, it logically follows that the motion does not satisfy any of the other more rigorous standards either. Therefore, this Court does not need to decide which standard should apply.

*Rufo* sets out a two-step process. First, the "party seeking the modification

---

[6] Security Finance argues that the Eleventh Circuit has applied *Rufo* in a non-institutional-reform context. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1298 (11th Cir. 2002). This Court disagrees. The Circuit merely cited *Rufo* for the general proposition that a district court has "broad discretion to modify an existing injunctive order when factual circumstances have changed . . . ." *Id.* The Circuit did not explain how broad that discretion is, nor did it apply the *Rufo* standard to the facts of that case.

The Court does note, however, that the Eleventh Circuit, after describing its decision in *United States v. City of Miami*, 2 F.3d 1439, 1508 (11th Cir. 1993), as "merely a gloss or a method of applying *Rufo*, not a distinct standard," cited to the Third Circuit's "flexible list of factors" approach in *Building & Construction Trades Council of Philadelphia*. *See Johnson*, 348 F.3d at 1433. This probably indicates that the Eleventh Circuit would most likely adopt the Third Circuit's approach, and this Court encourages it to do so when appropriate.

of the consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383. The moving party may satisfy this burden "by showing either a significant change in factual conditions or in law." *Id.* at 384. Second, if the moving party satisfies this initial burden, it must then show that "the proposed modification is suitably tailored to the changed circumstance." *Id.* Applying this standard, the Court disagrees that any of Security Finance's three arguments justify modifying the consent decree and lifting the injunction in this case.

Security Finance first argues that because it has not violated the injunction during the more than ten years it has been in place, the Court should lift the injunction. The Court does not find this argument persuasive. There is no natural expiration date for consent decrees. That Security Finance has not violated the injunction is commendable, but it is not a positive factor in favor of modifying the decree because this Court expects litigants to follow its orders. It will not give Security Finance extra credit for doing merely what is required.

Security Finance's second argument—that the injunction places it at a competitive disadvantage—is also deficient. To prove a significant change in factual conditions, the moving party must show that: (1) "changed factual conditions make compliance with the decree substantially more onerous" than was

contemplated; (2) the "decree proves unworkable because of unforeseen obstacles"; or (3) "enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384–85; *Johnson*, 348 F.3d at 1342.

Security Finance has not proved that any of these situations are true. First, there is no evidence that the factual conditions have changed *since Security Finance consented to the decree*, much less that any change has made it substantially more onerous to comply with the injunction.[7] Second, Security Finance voluntarily consented to a *prophylactic* injunction (i.e., it does more than merely stop Security Finance from violating TILA's fee-reporting requirements; it completely stops Security Finance from charging its customers for non-filing insurance, regardless of whether it charges the fee or premium in accordance with TILA). Therefore, at the time Security Finance consented that the decree, it was foreseeable that the injunction was going to have a significant effect on Security Finance's business practices, and probably not for the better. Third, the decree appears to have successfully restrained Security Finance from taking advantage of

---

[7] Security Finance presents only one, short affidavit from Ray Biggs, a Manager at Security Finance. The affidavit is not specific. It summarily states that Security Finance's competitors "have continued to purchase 'non-file insurance' and to charge a fee to their customers." (Doc. # 1, Ex. 3 at 2, ¶ 8.) There is no evidence that the competitors' use of this business practice has increased since this Court entered the consent decree, nor does the affidavit link any change in the competitive environment with an increased burden on Security Finance to comply with the injunction. The affidavit provides no other basis or reason for modification of the consent decree.

its customers in violation of TILA. Thus, the continued enforcement of the injunction is in line with—and certainly not against—the public interest. No doubt, the injunction is inconvenient and bad for business, but "Rule 60(b)(5) provides that a party may obtain relief from a court order when 'it is no longer equitable that the judgment should have prospective relief,' not when it is no longer convenient to live with the terms of a consent decree." *Id.* at 383.

Third, Security Finance argues that the Eleventh Circuit's recent decision in *Beneficial* was a significant change in law on which the consent decree was premised. The Court disagrees that this argument meets the *Rufo* standard. To prove a significant change in law, the moving party must show that either (1) "one or more of the obligations placed upon the parties has become impermissible under federal law," or (2) the "law has changed to make legal what the decree was designed to prevent." *Id.* at 388. If neither is true, then the change is a mere "clarification" of the law that "will not, in and of itself, provide a basis for modifying" the decree *unless* the moving party shows that "the parties based their agreement on a misunderstanding of the governing law." *Id.* at 390.

This Court finds that *Beneficial* is a mere clarification in the law that does not provide a basis for modifying the decree. First, none of the obligations placed on the parties by the consent decree are impermissible under federal law. Even

though *Beneficial* held that this Court may not impose injunctive relief under TILA after trial, the Supreme Court has consistently ruled that consent decrees may impose obligations in excess of what the law permits a court to impose without the consent of the parties. *See, e.g.*, *Suter v. Artist M.*, 503 U.S. 347, 354 n.6 (1992) (citing *Rufo*, 502 U.S. at 389) ("[P]arties may agree to provisions in a consent decree which exceed the requirements of federal law."); *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 526 (1986) ("[A] federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the Court could have awarded after a trial."). Therefore, the Court need not modify the consent decree simply because its requirements exceed what the Court would have been able to order and impose absent the settlement agreement.

Second, the law has not changed to make legal what the decree is designed to prevent: the acts committed by Security Finance and the other defendants would still be violations of the substantive provisions of TILA if Security Finance committed them today. *Beneficial* limited TILA's remedial provisions, not its substantive provisions.

Third, there is no indication that the parties based their agreement solely or even primarily on the misguided belief that TILA sanctioned injunctive relief, and

there is no evidence that the parties would not have consented to the decree had they known at the time that this Court did not have the power under TILA to impose the injunction after trial.[8]

All told, Security Finance has failed to show that there has been a significant change either in factual conditions or in law since it voluntarily agreed to forswear charging its customers a fee for non-filing insurance.[9] Therefore, under the lenient *Rufo* standard, this Court will not modify the consent decree and lift the injunction under Rule 60(b)(5).

### III. CONCLUSION

Accordingly, it is hereby ORDERED as follows:

1.  Security Finance's Motion to Modify Settlement Agreement and Final Judgment Pursuant to Rule 60(b)(5) is DENIED.

2.  The Clerk of the Court is DIRECTED to file this Order in all of the cases listed in the caption and apply this Court's ruling to the following motions:

---

[8] Security Finance argues that this Court obviously thought injunctive relief was available under TILA or else it would not have approved the settlement. But this Court's (or any other court's) holding that TILA allowed injunctive relief is not the same as the *parties*' belief that TILA allowed injunctive relief, which, according to *Rufo*, must be crucial to the parties' consent to the settlement.

[9] Because Security Finance has not satisfied the first prong of the *Rufo* standard, this Court does not need to address the second prong—whether the proposed modification is suitably tailored to address the new factual or legal circumstances.

Document No. 791 in Case No. 2:96-md-1130-MEF, Document No. 1288 in Case No. 2:94-cv-699-UWC, and Document No. 26 in Case No. 2:97-cv-832-UWC.

DONE this the 24th day of March, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE
